Katherine Keating (SBN 217908)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
Adam Vukovic (SBN 301392)
adam.vukovic@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:   (415) 675-3400
Facsimile:    (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| **Courthouse News Service**, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **Amanda Toste**, in her official capacity as Court Executive Officer/Clerk of the **Merced County Superior Court**; **Hugh Swift**, in his official capacity as Court Executive Officer/Clerk of the **Stanislaus County Superior Court**; **Shawn Landry**, in his official capacity as Court Executive Officer/Clerk of the **Yolo County Superior Court**; **Sharif Elmallah**, in his official capacity as Court Executive Officer/Clerk of the **Butte County Superior Court**; **Stephanie Hansel**, in her official capacity as Court Executive Officer/Clerk of the **Sutter County Superior Court**; **Bonnie Sloan**, in her official capacity as Court Executive Officer/Clerk of the **Yuba County Superior Court**, | |
| Defendants. | |

Plaintiff Courthouse News Service ("Courthouse News") alleges as follows:

**INTRODUCTION & BACKGROUND**

1. Since time beyond memory, the press has reviewed new civil complaints when they crossed the intake counter in American courts. During the transition from paper to electronic court records, federal courts and many state courts kept that tradition in place. However, some state court clerks abandoned it. They withheld new electronically filed ("e-filed") complaints from the press until after they were processed and "accepted" by court staff, thus delaying access and damaging the news. That group includes defendants, whose courts transitioned to e-filing in recent years and now delay access to new e-filed civil complaints until after they are processed and "accepted."

2. These delays are not surprising. Busy clerks are not always able to manually process and "accept" complaints as quickly as they would like, and vacations and illness can lead to staffing fluctuations that further affect processing time. Meanwhile, complaints sit in an electronic queue awaiting manual docket entry by court staff. However, these delays are also unnecessary and easily avoidable. Courts throughout California and across the nation provide the press and public with timely access to new e-filed civil complaints through means readily available to defendants.

3. The vast majority of federal courts and many state courts configure their e-filing and case management systems to automatically "accept" new civil complaints and make them available to the public shortly after the court receives them, both online through PACER and at the courthouse through public access terminals.

4. A growing number of state courts – including Fresno, Kern, Los Angeles, Orange, Riverside, Santa Clara, and Santa Barbara County Superior Courts in California – provide the same on-receipt access but take a slightly different approach. They use "press review queues" (also called "electronic media bins" or "media access portals") to make new e-filed civil complaints available to registered users through a designated web page as soon as they are received by the court, while they sit in the queue awaiting processing by court staff.

5. Notably, each of defendants' courts use e-filing and case management software provided by Tyler Technologies, Inc. ("Tyler"). Tyler has created a statewide press review queue for California courts that use its software. Nine different California superior courts currently connect to

1  and use Tyler's statewide press queue to make new civil complaints available to the press upon
2  receipt, and before administrative processing and "acceptance."

3        6.     Defendants could likewise provide timely, pre-processing access to new e-filed civil
4  complaints through a press review queue, as demonstrated by their sister courts, or through other
5  practicable alternatives used by other state and federal courts. However, despite Courthouse News'
6  requests that they cease their practices of withholding access to new e-filed civil complaints until
7  after processing and "acceptance," defendants refuse to do so. As a result, delays in access to new
8  civil complaints at defendants' courts remain regular and pervasive.

9        7.     Courthouse News brings this action under the First Amendment of the United States
10 Constitution to challenge defendants' policies and practices of withholding access to new e-filed
11 complaints until after administrative processing and "acceptance."

## JURISDICTION AND VENUE

13       10.    Courthouse News' claims arise under the First and Fourteenth Amendments to the
14 United States Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983-1988. This Court has
15 subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights) and 2201
16 (declaratory relief). Defendants are subject to personal jurisdiction in this judicial district at the time
17 this action is commenced.

18       11.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants
19 reside in California and are employed in this district, and because a substantial part of the events or
20 omissions giving rise to Courthouse News' claims occurred in this district.

## PARTIES

22       12.    Courthouse News is a nationwide news service founded almost 30 years ago out of a
23 belief that a great deal of news about civil litigation went unreported by traditional news media, a
24 trend that has only increased in the last decade. Courthouse News now employs approximately 240
25 people, most of them editors and reporters, covering state and federal trial and appellate courts in all
26 50 states in the United States.

27       13.    Defendant Amanda Toste is the Court Executive Officer/Clerk of the Merced County
28 Superior Court and is sued in that official capacity.

14. Defendant Hugh Swift is the Court Executive Officer/Clerk of the Stanislaus County Superior Court and is sued in that official capacity.

15. Defendant Shawn Landry is the Court Executive Officer/Clerk of the Yolo County Superior Court, and is sued in that official capacity.

16. Defendant Sharif Elmallah is the Court Executive Officer/Clerk of the Butte County Superior Court and is sued in that official capacity.

17. Defendant Stephanie Hansel is the Court Executive Officer/Clerk of the Sutter County Superior Court and is sued in that official capacity.

18. Defendant Bonnie Sloan is the Court Executive Officer/Clerk of the Yuba County Superior Court and is sued in that official capacity.

19. Each of the defendants identified above (hereafter "Defendants") are responsible for, among other things, the administration of court records at their respective courts.

20. Acting in their official capacities, Defendants, and those acting under their direction and supervision, are directly involved with and/or responsible for the delays in access to new complaints experienced by Courthouse News and other members of the press at their respective courts, which acts reflect the official policies and practices the clerks' offices as a whole.

21. Defendants' actions, as alleged in this Complaint, are under the color of California law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. On information and belief, Defendants' primary places of employment are in the counties in which their courts sit.

22. Courthouse News sues Defendants in their official capacities only. Courthouse News seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTS

### Courthouse News' News Reporting Activities

23. Courthouse News offers its readers a variety of publications. Courthouse News publishes a free website, www.courthousenews.com, featuring news reports and commentary read by roughly 30,000 people every weekday. The website functions like a daily newspaper, featuring

staff-written articles from across the nation, posted throughout each day and rotated off the page on a 24-hour news cycle. On a subscription basis, Courthouse News publishes the Daily Brief covering opinions from all state and federal courts as well as significant rulings from federal district courts. Also on a subscription basis, Courthouse News publishes New Litigation Reports containing original, staff-written summaries of significant new civil complaints, sent to subscribers via e-mail each evening.

24. Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, such as: *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune*, *San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report* and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

25. Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices and news outlets such as: The Associated Press, *Austin American-Statesman The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review Journal, Los Angeles Business Journal, Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times, Portland Business Journal, St. Paul Business Journal, The Salt Lake Tribune*, *The San Jose Mercury News, San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Variety, Walt Disney Company and Warner Bros.

26. In California, the Courthouse News litigation reports cover unlimited jurisdiction civil complaints – complaints, focusing on those against business institutions and public entities.

Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the individual is famous or notorious. For larger courts, reports are emailed to subscribers each evening.

27.     Courthouse News does not seek to review or report on the small number of new civil complaints that are statutorily confidential or accompanied by a motion to seal for a judicial determination of whether the complaint should be confidential. Through their Tyler Odyssey case management and e-filing systems, Defendants can automatically segregate confidential e-filings at intake so they are not publicly available.

28.     Courthouse News publishes 16 New Litigation Reports on California courts, which cover civil actions filed in all four federal district courts and all 58 superior courts in California. Courthouse News covers Defendants' courts in the *Central Valley* and *Northern CA Regional* New Litigation Reports, which combined have approximately 96 subscribing institutions.

29.     To prepare the New Litigation Reports and identify new cases that may warrant a website article, Courthouse News' reporters visit their assigned court each workday so they can review all the complaints filed with the court that day to determine which are of interest to Courthouse News' readers. Given the nature of the coverage in the New Litigation Reports and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up the reporting on factual and legal controversies for subscribers and readers.

30.     Prior to commencing this action, Courthouse News tracked and compiled access data for new civil unlimited complaints e-filed at Defendants' courts. This tracking confirms Courthouse News' experience of delayed access to new e-filed civil unlimited complaints at each of Defendants' courts. Courthouse News currently experiences, and at all relevant times has experienced, delays in access to new e-filed civil unlimited complaints at Defendants courts ranging from one to three days, and sometimes longer.

**The Constitutional Test for Challenging Delays In Access to New Civil Complaints**

31.     A right of access grounded in the First Amendment applies to non-confidential civil complaints.

32. The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court process or document satisfy Constitutional scrutiny. *See, e.g., Courthouse News Service v. Planet,* 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)).

33. In Planet *III*, the Ninth Circuit applied this two-step process to a California Superior Court clerk's policy and practice of withholding access to new civil complaints until after administrative processing. Applying the "experience" and "logic" test of *Press-Enterprise II*, the Ninth Circuit addressed and conclusively resolved the first step by holding that the press has a qualified right of timely access to newly-filed civil complaints that attaches when the complaint is filed, *i.e.*, when the complaint is received by the court. *Id.* at 585, 588, 591.

34. Turning to the second step, *Planet III* determined that the clerk had failed to "demonstrate … that there is a 'substantial probability' that its [asserted] interest[s]" to support withholding access to new civil complaints until after administrative processing "would be impaired by immediate access, and … that no reasonable alternatives exist to 'adequately protect' that government interest." *Id*. at 596 (citing and quoting *Press-Enterprise* II, 478 U.S. at 14). The clerk's policy of withholding access to new civil complaints until after administrative processing thus failed both prongs of the *Press-Enterprise II* test and violated Courthouse News' First Amendment right of timely access to new civil complaints. *See id*. at 596-600.

35. On remand following *Planet III*, the District Court in the *Planet* case entered an Amended Judgment for Declaratory and Injunctive Relief reflecting the holding from Planet *III* that a qualified First Amended right of timely access attaches "when new complaints are received by a court, rather than after they are 'processed.'" *Courthouse News Service v. Planet*, 2021 WL 1605216, *1 (C.D. Cal. 2021) ("*Planet* Amended Judgment").

**Defendants Cannot Justify Their Practices of Withholding Access to New Civil Complaints Until After Administrative Processing**

36. Where, as here, the First Amendment right of access applies, it attaches upon receipt, and any delays in access must be justified under constitutional scrutiny.

37. Turning back to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular process or document, access may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Planet III*, 947 F.3d at 594–95 (quoting *Press-Enterprise II*, 464 U.S. at 510).

38. Defendants cannot satisfy their burdens of justifying the delays in access to new e-filed civil complaints at their courts because the delays are unnecessary and easily avoidable, as demonstrated by the timely access provided by federal and state courts across the country using alternatives that are readily available to Defendants and their courts.

39. E-filing generally makes it easier for courts to provide timely access to new civil complaints than was previously the case in the paper world. Instead of basic intake work being done by clerks at an intake counter, that work is now done by e-filing software, which filers use to enter case information and whatever minimum submission requirements the court specifies before submitting their e-filings to the court. Based on the case designation supplied by the filer, the e-filing software can sort new, non-confidential complaints and automatically make them available to the press and public contemporaneously upon their receipt by the court.

40. It is no different at courts, such as Defendants' courts, that use the Tyler Odyssey e-filing system. Like the e-filing systems used by the federal district courts and other state courts, the Tyler Odyssey system enables litigants to submit electronic documents 24 hours a day, 7 days a week, 365 days a year. The initial intake tasks court clerks once handled at the intake counter, such as verifying the correct court location and accepting payment, are now handled automatically by the Odyssey software at the time of submission. Additionally, much of the data entry historically performed by court clerks as part of post-filing docketing in paper courts is now entered by the filer before he or she submits the e-filing.

41. Tyler provides courts using its Odyssey software with several options for making new e-filed civil complaints available to the press and public on receipt. The most common option is the press review queue, which is currently in use throughout California and Georgia. In California, the Superior Courts for the counties of Fresno, Kern, Monterey, Napa, San Mateo, Santa Barbara, Santa Cruz and Sonoma all use Tyler's Odyssey case management and e-filing systems, and they all provide access to new civil complaints via the statewide press review queue Tyler established for the California courts through Odyssey.

42. Such on-receipt review queues are not unique to Tyler or courts using Tyler software. Courts across the nation using different e-filing systems provide their own versions of on-receipt review queues, either limited to the press or open generally to the public, including courts using homegrown software (*e.g.* statewide in New York, and Orange County Superior Court in California) and courts using software provided by third party vendors, such as Granicus (statewide in Arizona) and Journal Technologies (Los Angeles, Placer and Riverside counties in California). A small number of federal district courts – including this Court – also provide on-receipt access to new e-filed complaints through a public review queue using temporary case numbers.

43. Alternatively, the Tyler Odyssey e-filing system can be modified to operate like the vast majority of federal district courts, *i.e.*, the e-filing system accepts new e-filings automatically rather than having a clerk manually process and "accept" them. The state courts in Las Vegas, which use the Tyler Odyssey system, operate in this manner. Like new complaints e-filed in most federal district courts, new complaints e-filed in the Nevada state courts are automatically "accepted" and made available to the public moments after they are filed. On a statewide basis, the Vermont state courts in early December instituted an auto-accept system available to the public also using Tyler's Odyssey e-filing system. Other "auto-accept" courts that make new e-filed complaints available to the press and public upon receipt include the statewide court systems in Alabama, Connecticut, Hawaii and Utah.

44. Despite the availability of these readily available alternatives, Defendants continue to withhold access to new e-filed civil unlimited complaints until after court clerks manually process and "accept" them, resulting in pervasive delays in access to new e-filed civil complaints

8

## COUNT ONE

### Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983

45. Courthouse News incorporates the allegations of Paragraphs 1-44 herein.

46. Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly filed civil unlimited complaints from press and public view until after administrative processing, and the resulting denial of timely access to new civil unlimited complaints upon receipt for filing, deprive Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

47. The presumption of access to new civil complaints, which arises when those complaints are filed, at Defendants' courts may be restricted only if closure is essential to preserve higher values and is narrowly tailored to serve those interests. *Planet III*, 947 F.3d at 594-95 (citing *Press-Enterprise II*). For Defendants' no-access-before-process-and-review policy to "survive *Press-Enterprise II*'s two-prong balancing test" (*i.e.*, "rigorous" scrutiny), Defendants "must demonstrate that there is a 'substantial probability' that [their] [asserted] interest[s]… would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." *Planet III*, 947 F.3d at 596. Defendant cannot satisfy this test.

48. Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Courthouse News prays for judgment against Defendants as follows:

1. A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' policies and practices that knowingly affect delays in access to newly filed civil unlimited complaints, including, inter alia, his policy and practice of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States

Constitution because these policies and practices constitute an effective denial of timely public access to new civil complaints, which are public court records to which the First Amendment right of access applies;

    2. A permanent injunction against Defendants, including his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him, or at his direction or under his control, prohibiting him from continuing his policies and practices that deny Courthouse News timely access to new civil unlimited jurisdiction complaints, including, *inter alia*, his policy and practice of denying access to complaints until after administrative processing;

    3. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

    4. All other relief the Court deems just and proper.

Dated:   December 17, 2021                    BRYAN CAVE LEIGHTON PAISNER LLP

                                                        By:   */s/ Jonathan G. Fetterly*
                                                                Jonathan G. Fetterly
                                                                Attorneys for Plaintiff
                                                                COURTHOUSE NEWS SERVICE

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                                                                  Case No.